UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

WAYNE SHELTON :
:
vs. : CR No. 05-049-ML
: (CA No. 08-365-ML)
UNITED STATES OF AMERICA :

**MEMORANDUM AND ORDER**

Mary M. Lisi, Chief United States District Judge.

Wayne Shelton has filed a *pro se* motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 in the above proceeding. Shelton was convicted and sentenced in this Court for armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d). For the reasons that follow, that motion is denied.

## FACTS AND BACKGROUND[1]

On August 11, 2004, the day before the robbery, Shelton was observed "casing" an East Providence branch of Bank Rhode Island, a federally insured bank, by watching it from across the street for two hours. On the day of the robbery, he again sat across the street watching the bank for in excess of two hours. Then, at about 3:00 p.m. on August 12, Shelton burst into the bank brandishing a pellet gun, which looked like a real handgun, and wearing sunglasses, a hat, and a bandana over his face. Pointing the gun, he methodically demanded large bills from each of the four tellers, who gave him $9,000. While stuffing the money into a duffle bag, Shelton placed his gun down, but he retrieved it before fleeing the bank. A bank customer who followed Shelton saw him remove his disguise and place it and the gun into a duffel bag, mount his mountain bike and flee the area.

---

[1] Except as otherwise indicated, the facts recited herein are drawn from the decision of the Court of Appeals affirming Shelton's conviction and sentence, which in turn summarized the evidence presented at trial. See United States v. Shelton, 490 F.3d 74 (1st Cir. 2007).

A police officer, who had heard reports describing the bank robber, spotted Shelton on his bike several blocks from the bank, and ordered him to stop. Shelton ignored the command. Abandoning the mountain bike, he continued to flee on foot. After chasing Shelton for two blocks, a second officer captured and arrested Shelton in a backyard, still holding the duffle bag with the money and the pellet gun.

During the booking, Shelton initially refused to answer questions. Later, he identified himself with a false name and false date of birth. After arrival at the cell block, an officer requested an ambulance for Shelton to check on his well-being. En route to the hospital for medical attention, Shelton told the officer, "I will get away from you. I have done this in the past and I got away." Later that evening, he admitted his true name after being confronted by a police officer who recognized him.

On April 20, 2005, a District of Rhode Island grand jury returned a one-count indictment charging Shelton with bank robbery using force and violence, in violation of 18 U.S.C. §§ 2113(a) and (d). Shelton was represented by appointed counsel, Attorney William T. Murphy, during all proceedings in this Court.

A major portion of the pretrial proceedings – both before and after the indictment – focused on the issue of Shelton's competency to stand trial. At his initial appearance on August 20, 2004, Shelton was ordered held for psychiatric / psychological examination pursuant to 18 U.S.C. § 4241. Although a correctional psychologist's report deemed Shelton competent, Shelton was committed after hearing to a federal Medical Center for further observation and treatment to determine whether he could be rendered competent to stand trial. (See Order dated November 1, 2004 [Doc. # 16].) During his commitment, Shelton was provided with medication, and he was subject to psychiatric observation and counseling.

At a further hearing on April 21, 2005, Magistrate Judge Martin reviewed a report by Dr. Richard I. Frederick, Ph.D., a Bureau of Prison psychologist, who found that Shelton was "exaggerating and malingering" with respect to his symptoms of mental illness.[2] Thereafter, the Court (Almond, M.J.) granted defense counsel's motion for appointment of a medical expert to determine Shelton's competency to stand trial. Dr. Ronald Stewart, a psychiatrist, was engaged to examine Shelton. At the final competency hearing on September 6, 2005, Magistrate Judge Almond found that Shelton was mentally competent to stand trial and to assist properly in his defense. (See Order entered on September 8, 2005 [Doc. # 38].)

Prior to trial, Attorney Murphy discussed with Shelton raising a defense of insanity during the commission of the offense. (See Affidavit of Attorney William T. Murphy dated December 5, 2008 ["Murphy Aff."] [Doc. #98-2], Exh. B to Memorandum in Support of Government's Objection to Petitioner's Motion To Vacate, Set Aside or Otherwise Correct Sentence, Pursuant to 28 U.S.C. § 2255 ["Gov't Mem."], at ¶¶ 10-11.) At counsel's request, Dr. Stewart met with Shelton and reviewed certain of his medical records. According to counsel, Shelton was cooperative and supportive of raising an insanity defense. (See id. at ¶ 10.)

In addition, counsel engaged in pretrial discussions with the Government concerning a possible plea agreement. However, because Shelton was unable (or unwilling) to stipulate to the facts of the robbery, no agreement could be reached. (Id. at ¶ 8.) Counsel's proposal of an Alford agreement[3] was declined by the Government. (Id. at ¶ 9.)

---

[2] The report noted that Shelton repeatedly claimed not to remember any facts concerning the robbery (even though he could remember events leading up to the robbery), and claimed he heard voices that berated him. The report further noted that Shelton took on a different affect when he spoke with his sister than when dealing with hospital staff and that he had been observed "cheeking" [i.e., not swallowing] his medication and then claimed it was not helping him.

[3] See North Carolina v. Alford, 400 U.S. 25(1970) (upholding procedure in which a defendant may plead guilty and consent to be sentenced without admitting to the facts of the offense).

After consultation with his counsel, Shelton knowingly and voluntarily waived a trial by jury. At the hearing on his jury waiver request, Shelton specifically indicated in response to this Court's questions that he was aware his counsel was intending to raise an insanity defense and that as part of that defense, counsel would be procuring the testimony of Dr. Stewart to testify at trial. (See Transcript of Hearing on Defendant's Motion to Waive Jury Trial, conducted on January 31, 2006 ["Jury Waiver Tr."] at 2-3.)

A four-day bench trial was conducted before this Court, at which Shelton testified in support of his insanity defense. He testified that he had no memory of the bank robbery or his statements in custody; he had no memory of other violent incidents in his past; and that he heard voices that put him down. (See Transcript of Trial conducted on February 16, 2006 ["2/16/06 Trial Tr."] at 23-25, 34, 72-76.) Dr. Stewart testified for the defense that he had examined Shelton on two occasions; that Shelton suffered from a "major depressive disorder;" and that, on the day of the robbery, Shelton acted in a "dissociative state" which resulted in "amnesia" with respect to the incident. (See Transcript of Trial conducted on February 21, 2006 ["2/21/06 Trial Tr."] at 6-8, 43-44.) In rebuttal, the Government presented Dr. Frederick, who had observed Shelton during his four months of observation at a federal prisoner medical facility. Dr. Frederick testified that Shelton suffered from a minor mental illness but that he could appreciate right from wrong; that during his observation Shelton had been observed "cheeking" [i.e., not taking] his medication; that his behavior was markedly different when he was communicating with his sister than when he was dealing with the staff at the prison and that he appeared to be "malingering." (See Transcript of Trial conducted on February 22 2006 ["2/22/06 Trial Tr."] at 33-35, 39-40.)

This Court issued a bench decision rejecting Shelton's insanity defense and finding him guilty of armed robbery. In the decision this Court summarized the Government's evidence, which

included the bank's surveillance videotape and testimony by eyewitnesses at the scene and by Providence police who investigated and arrested Shelton shortly after the robbery. (Transcript of Bench Decision issued on February 28, 2006 ["Decis Tr."] at 2-3.) The Court noted evidence that during his arrest and subsequent booking, Shelton did not appear disoriented, that he initially gave a false name and birth date and stated that he would get away with this and then later acknowledged his true name when he was recognized. (Id. at 9-10.)

This Court's decision addressed Shelton's insanity defense. The Court found much of Shelton's testimony on this point – that he had no recollection of either the robbery or how he came to be in the backyard where he was arrested; that he could not remember details of previous incidents of violence in which he was involved, that he heard voices berating him – not to be credible in light of other evidence. (Id. at 13-16.) The Court also reviewed the testimony of both experts, Dr. Stewart and Dr. Frederick. After summarizing Dr. Stewart's testimony, this Court noted that Dr. Stewart had only met with Shelton twice, and was not aware of the all of the facts of the robbery, including Shelton's casing of the bank, his use of a disguise and his methodical actions during the robbery. (Id. at 16-18.) Thus, the Court concluded that Dr. Stewart's testimony was "of no or little value" and "not supported by the record facts." (Id. at 18-19.) By contrast, this Court credited the testimony of Dr. Frederick that Shelton suffered from a minor mental illness, that he was "malingering," and that he could appreciate right from wrong. (Id. at 19-23.) The Court noted Dr. Frederick's testimony that Shelton had been "cheeking" his medication, and that his behavioral affect was markedly different when he was speaking with his sister than when he was dealing with prison staff. (Id.)

Based on the foregoing, this Court rejected Shelton's insanity defense and found him guilty of the offense charged.

The presentence report (PSR) prepared by the U.S. Probation Office found that Shelton was

a career offender and calculated a net offense level of 34, with a Criminal History category VI, resulting in a Sentencing Guideline range of 262 to 327 months.

Prior to sentencing, defense counsel filed a Memorandum objecting to the career offender designation and contending that the maximum guideline sentence should have been 137 months. At the sentencing hearing, Attorney Murphy, while acknowledging that the career offender designation was correct, argued for a sentence of ten years (120 months) based on Shelton's personal history of abuse, mental illness and drug addiction. (See Transcript of Sentencing Hearing conducted on June 20, 2006 ["Sent. Tr"] at 11.)

After considering all arguments, this Court imposed a sentence of 262 months, the lowest end of the applicable guideline range, followed by five years of supervised release. In pronouncing sentence this Court indicated that it considered all factors, including Shelton's traumatic childhood and upbringing, but refused to impose a sentence below the guideline range, in view of Shelton's history of violent criminal conduct, including a prior armed robbery with a shotgun, and its finding that Shelton's insanity defense was not credible. (Id. at 13-18.)[4]

Shelton appealed, represented by new counsel. On appeal he argued: (1) that the Court erred in rejecting his insanity defense; and (2) that his sentence was not reasonable. The Court of Appeals affirmed the conviction and sentence. See United States v. Shelton, 490 F.3d 74 (1st Cir. 2007). The Court of Appeals upheld this Court's finding that Shelton had not proved his affirmative defense of insanity by clear and convincing evidence. Id. at 79-80. After noting that Shelton was not

---

[4] In the course of pronouncing sentence, the Court stated:
I don't buy for a minute the act, Mr. Shelton. Don't buy it in the least. [I] [d]idn't buy it during the trial because the guy who went in the bank with the sunglasses and bandana and the gun is a very different guy than who you're trying to be here in the courtroom. And so I think you know full well what you did. You said it here today. You said you don't want to remember, and I think that's what it is. I don't think it's that you don't remember. I think you just don't want to remember.
(Sent. Tr. at 17.)

asserting that this Court was unaware it had the authority to depart downward from the guidelines, the court also found that the imposition of a sentence at the low end of the guidelines range was reasonable. Id. at 80. Shelton's petition for certiorari was denied by the Supreme Court on October 1, 2007.

Thereafter, Shelton filed the instant motion to vacate. In his motion he claims that his counsel rendered ineffective assistance by (1) raising a defense of insanity over Shelton's objection; (2) failing to object to his "unreasonable sentence;" and (3) failing to inform Shelton of the existence of a plea agreement proffered by the Government. The Government has filed an objection with a supporting memorandum. This matter is ready for decision.[5]

## DISCUSSION

### A. General Principles

Title 28 U.S.C. § 2255 provides in pertinent part:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. §2255(a).

Generally, the grounds justifying relief under §2255 are limited. A court may grant such

---

[5] Although Shelton has requested an evidentiary hearing, no hearing is required in connection with any issues raised by this motion to vacate, because, as discussed infra, the files and records of this case conclusively establish that his claim is without merit. This is so notwithstanding the differing affidavits of Shelton and his counsel, because, as discussed infra, the Court finds Shelton's affidavit to be conclusory and contradicted by the record. See David v. United States, 134 F.3d 470, 477 (1st Cir. 1998) (district court properly may forego any hearing "when (1) the motion is inadequate on its face, or (2) the movant's allegations, even if true, do not entitle him to relief, or (3) the movant's allegations need not be accepted as true because they state conclusions instead of facts, *contradict the record*, or are inherently incredible.") (emphasis added) (internal quotations omitted). See also United States v. Michaud, 925 F.2d 37, 39 (1991) (conclusory statements or allegations "unsupported by specifics are insufficient to require a court to grant an evidentiary hearing"), and Panzardi-Alverez v. United States, 879 F.2d 975, 985 n.8 (1st Cir. 1989) (no hearing required where district judge is thoroughly familiar with the case).

relief only if it finds a lack of jurisdiction, constitutional error or a fundamental error of law. See United States v. Addonizio, 442 U.S. 178, 184-185 (1979) ("[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice.") (internal quotes omitted).

Moreover, a motion under § 2255 is not a substitute for a direct appeal. See United States v. Frady, 456 U.S. 152, 165 (1982). A movant is procedurally precluded from obtaining § 2255 review of claims not raised on direct appeal absent a showing of both "cause" for the default and "actual prejudice" -- or, alternatively, that he is "actually innocent" of the offense for which he was convicted. Bousley v. United States, 523 U.S. 614, 622 (1998) (citations omitted). See also Brache v. United States, 165 F.3d 99, 102 (1st Cir. 1999). Claims of ineffective assistance of counsel, however, are not subject to this procedural hurdle. See Knight v. United States, 37 F.3d 769, 774 (1st Cir. 1994).

B.    Ineffective Assistance Claims

A petitioner who claims that he was deprived of his Sixth Amendment right to effective assistance of counsel must demonstrate:

(1)    That his counsel's performance fell below an objective standard of reasonableness; and

(2)    A reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). See Cofske v. United States, 290 F.3d 437, 441 (1st Cir. 2002).

In assessing the adequacy of counsel's performance, the Court looks to 'prevailing professional norms.' All that is required is a level of performance that falls within generally accepted boundaries of competence and provides reasonable assistance under the circumstances. Ramirez v. United States, 17 F.Supp.2d 63, 66 (D.R.I. 1998) (quoting Scarpa v. Dubois, 38 F.3d 1, 8 (1st Cir.

1994) and citing Strickland, 466 U.S. at 688). To satisfy the prejudice requirement under Strickland, a defendant must show a reasonable probability that, but for counsel's errors, the outcome of trial would have been different. United States v. Theodore, 468 F.3d 52, 56 (1st Cir. 2006) (citing Strickland, 466 U.S. at 695).

As discussed below, none of Shelton's ineffective assistance claims has merit.

1. Assertion of Insanity Defense

Shelton first claims that his counsel rendered ineffective assistance by asserting a defense of insanity at trial over Shelton's objection. He contends that he disputed this defense and asked his counsel not to raise it. (Motion to Vacate, Ground One and pp. 8-9.)

While it is true that the ultimate decision whether to raise an insanity defense is one that belongs to a defendant rather than to his attorney, that right to decide is subject to practical constraints. Dean v. Clinton Correctional Facility, 93 F.3d 58, 62 (2d Cir. 1996). In Dean the court noted that in reviewing a claim of ineffective assistance based upon counsel's assertion of an insanity defense over petitioner's objection, a court should "acknowledge and consider the inevitable conflict between a lawyer's duty to represent a client zealously and a lawyer's duty to safeguard the fundamental rights of the client." Id. Moreover, a petitioner who asserts such a claim bears the burden of showing either: (1) that he in fact objected on the record; or (2) that he not only disagreed with counsel, but that his will was 'overborne' by his counsel. Id. (quotations and citations omitted). Based on Dean's failure to meet either test, the court rejected his claim of ineffective assistance based on his counsel's assertion of an insanity defense over his alleged objection. Id. at 62-63.

Here, Shelton's claim is without force. Putting aside the issue whether this claim was waived due to Shelton's failure to raise it on his direct appeal (represented by different counsel), see Frady, 456 U.S. at 165, Shelton's assertions are flatly contradicted by his conduct during the proceedings

and his testimony at trial. First, Shelton has not pointed to, and this Court has not located, any objection by him on the record to the assertion of an insanity defense. Indeed, at the hearing on his request to waive a jury trial, Shelton specifically indicated without objection that he was aware his counsel was intending to raise an insanity defense and that Dr. Stewart would testify on that issue at trial. (See Jury Waiver Tr. at 2-3.)

Shelton has also failed to make any alternative showing that his will on this issue was "overborne" by his counsel. According to the sworn assertions of Shelton's counsel, he and Shelton conferred concerning the insanity defense, and Attorney Murphy advised Shelton that this was the only defense available to him, in view of Shelton's unwillingness (or inability) to admit his participation in the robbery and the substantial physical and testimonial evidence against him. (Murphy Aff. at ¶ 5.)

Moreover, Shelton's own conduct was to all appearances supportive of this defense. This Court observed that notwithstanding his competency determination, at trial Shelton took on a disinterested appearance and engaged in behavior calculated to appear that he was mentally impaired and not fully aware of his surroundings. Shelton testified at length concerning his childhood but repeatedly denied any memory of the robbery, his arrest, and the statements he made while in custody, including false statements concerning his identity. (See 2/16/06 Trial Tr. at 5-7.) He likewise denied any memory of his discussions with, or of writing to, Dr. Stewart. (Id. at 61-62, 69.) This claimed lack of recollection was consistent with Dr. Stewart's theory that Shelton suffered from a major depressive disorder with psychotic features and "dissociative reaction" which rendered him incapable of knowing the wrongfulness of his behavior on the date of the robbery. Shelton at no point objected to Dr. Stewart's testimony. Finally, Shelton pressed his insanity defense on direct appeal to the First Circuit, claiming that this Court erred in concluding that he had failed to prove

that defense at trial. See Shelton, 490 F.3d at 78-80.

In short, Shelton's assertion that he did not wish his counsel to raise the insanity defense is belied by the record and by his own actions throughout court proceedings. Therefore, balancing counsel's duty to represent Shelton zealously with his duty to safeguard his fundamental rights "in the context of an adversarial process," Dean, 93 F.3d at 62, this Court cannot say that Attorney Murphy rendered ineffective assistance in this respect. Given the overwhelming evidence of Shelton's guilt, his claimed lack of recall of the events in question and his refusal or inability to make the admissions necessary to reach a plea agreement, counsel's tactical conclusion that raising a defense of insanity was Shelton's best and only defense at trial was eminently sound and reasonable. Therefore, this claim must fail.

2.   Failure to Challenge Sentence

Shelton next claims that his trial counsel was ineffective in failing to challenge his sentence as procedurally unreasonable. (Motion to Vacate, Ground Two and pp. 10-12.) At the sentencing hearing defense counsel suggested in passing that the requested sentence of 10 - 12 years was significantly less than what this Court could impose.[6] Shelton contends that because this Court did not specifically respond to that remark, the Court may have believed it could not impose a sentence below the applicable guideline range -- and that his trial counsel should have raised this point at the sentencing hearing. Shelton further claims that his appellate counsel was ineffective for not raising this point on direct appeal.

---

[6] In the course of argument counsel stated:

In the sentencing guideline [sic, presumably referring to Shelton's memorandum objecting to the PSR] I think I asked the Court to impose a sentence of 12 years or maybe it was 120 months, but something in that range, *which is significantly less than what the Court can do*, and to depart from the sentence guidelines in recognition of the significantly impaired development this Defendant has had. (Sent. Tr. at 11.) (Emphasis added.)

-11-

These claims do not require extensive discussion. First, the context cuts against any suggestion that counsel was asserting that this Court could not depart below the applicable guideline range, as counsel's remark was immediately followed by his request that this Court do just that. This Court was fully aware of its power under United States v. Booker, 543 U.S. 220 (2005), and its progeny, to depart from the applicable guideline range at the time of Shelton's sentencing, and there is nothing in the record to suggest otherwise. Thus, Shelton's attempt to seize upon a single clause, made in the course of counsel's vigorous and extensive argument on behalf of Shelton for a reduced sentence, is spurious and disingenuous.

Moreover, this Court specifically addressed the departure issue, stating that after much consideration and in view of Shelton's history of violence, the Court could not follow defense counsel's recommendation but rather would impose a sentence at the low end of the applicable Guideline range.[7] These comments provide ample indication that this Court was fully aware of its ability to depart or vary and that the refusal to do so was based on careful deliberation. Shelton confuses this Court's discretionary decision not to impose a sentence below the applicable guideline range with a misperceived lack of knowledge of its ability to do so.

The foregoing discussion disposes of this claim not only as to Shelton's trial counsel but also as it respects appellate counsel. Because the claim is without merit, appellate counsel did not perform deficiently in failing to raise it on direct appeal. Even if it had minimal merit, appellate

---

[7] This Court stated:

Mr. Shelton, as I said, I struggled long and hard with what the sentence was appropriate. Mr. Murphy has argued quite eloquently on your behalf that a sentence of 10 to 12 years would be sufficient.
However, in view of your history of violence perpetrated against innocent people, I cannot follow the recommendation in all good conscience and instead feel that I must impose the sentence that I've been posed here today, as I said, to protect not only the public from you but to protect yourself from you."

(Sent. Tr. at 18.)

counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S. 259, 288 (2000). Here, appellate counsel's decision to challenge the reasonableness of the sentence overall did not constitute deficient performance. See United States v. Jimenez-Beltre, 440 F.3d 514, 517 (1st Cir. 2006) (en banc) (under Booker "sentences would be reviewable for reasonableness whether they fell within or without the guidelines.").

      3.     <u>Failure to Inform Client as to Potential Plea Agreement</u>.

Shelton's final claim is that his counsel failed to inform him of a plea offer proffered by the Government and that had he been informed of such an offer, he would have pled guilty. He requests an opportunity to accept a plea agreement providing for a lesser proposed guideline sentencing range. (Motion to Vacate, Ground Three, and pp. 13-14.) This claim fails for several reasons.

First, while it is well established that counsel has a duty to advise his client of all plea offers and that failure to do so may constitute ineffective assistance, see United States v. Rodriguez Rodriguez, 929 F.2d 747, 752, 753 (1st Cir. 1991), the record here belies Shelton's claim. In his affidavit, Attorney Murphy states that he recalled discussing with Shelton a proposed plea agreement and the possibility of pleading guilty but that Shelton's refusal to accept responsibility for the robbery, because he could not recall committing it, precluded any agreement. (Murphy Aff. at ¶ 8.) Counsel further stated that he proposed that Shelton submit an Alford plea, but the Government refused to agree to such a plea in this case, (Id. at ¶ 9.) The Government corroborates counsel's proposal of an Alford plea. (See Gov't Mem. at 17.)

Shelton has filed no response to Attorney Murphy's specific averments. Thus, this Court is left with the allegations in his motion to vacate and his Affidavit that his counsel "never communicated to me that any plea agreement existed," and that (in hindsight) had he been offered

a plea agreement with a lower guideline range, he would have accepted. As the Government points out, even taking these allegations as true, Shelton has not shown prejudice. In order to obtain any reduction in his offense level for acceptance of responsibility, Shelton would have had to do just that -- admit to sufficient facts and accept responsibility. However, throughout his pretrial, trial and sentencing proceedings, Shelton was unwilling to admit his actions in robbing the bank, claiming lack of memory. (See Murphy Aff. at ¶¶ 4, 8; 2/16/09 Trial Tr. at 72-77.)[8] Furthermore, at the hearing on his motion to waive jury trial, Shelton made no mention of any desire to plead guilty. Thus, this Court finds his allegations, as set forth in his motion to vacate and Affidavit, to be conclusory and self-serving. See Michaud, 925 F.2d at 39 (conclusory statements or allegations in habeas papers do not warrant relief).

Counsel's failure to successfully negotiate an Alford agreement due to the Government's refusal cannot be considered deficient performance. Moreover, even if counsel had been successful in negotiating such an agreement, it is not clear that Shelton would have obtained any offense level reduction for acceptance of responsibility. See United States v. Burns, 925 F.2d 18 (1st Cir. 1991)(upholding district court's refusal to give offense level reduction for acceptance of responsibility as part of Alford plea).

Finally, Shelton's assertions that he did not understand the maximum sentence for his offense and that he was misled by his counsel's prediction of a sentence of not more than 120 months,

---

[8] For this reason, the decisions in Cullen v. United States, 194 F.3d 401 (2d Cir. 1999), and Gordon v. United States, 156 F.3d 376 (2d Cir. 1998), cited by Shelton, do not assist him. Although both cases involved claims similar to Shelton's, neither decision involved the circumstance present here, namely, Shelton's refusal (or inability) to admit to the facts of the offense, the *sine qua non* of any plea agreement.

In Rodriguez, the First Circuit found that allegations that petitioner's counsel had a conflict of interest, which prevented counsel from advising him of a plea agreement proposed by the Government and communicating petitioner's counteroffer back to the Government, were sufficient to warrant an evidentiary hearing. 929 F.2d at 752. No such conflict of interest is alleged here.

likewise fails. It is well settled that an attorney's inaccurate prediction of his client's probable sentence, standing alone, will not satisfy the "prejudice" prong of the ineffective assistance test. See United States v. LaBonte, 70 F.3d 1396, 1413 (1st Cir. 1995) (counsel's inaccurate prediction about sentencing generally not sufficient to sustain claim of ineffective assistance), overruled on other grounds, 520 U.S. 751 (1997); Knight v. United States, 37 F.3d 769, 775 (1st Cir. 1994) (same). Moreover, in view of Shelton's extensive pretrial discussions with his experienced counsel concerning his competency to stand trial, the waiver of a jury trial and the defense to be raised on his behalf, this Court finds it difficult to believe that Shelton was unaware of the 25-year maximum possible sentence for his offense. Thus, this final claim fails as well.[9]

This Court has considered Shelton's other arguments and finds them to be without merit.

## CONCLUSION

In view of the foregoing considerations, Shelton's motion to vacate under § 2255 is hereby DENIED and dismissed.

SO ORDERED:

_____
Mary M. Lisi
Chief United States District Judge

May 26, 2009

---

[9] Shelton's request for an opportunity to accept a plea agreement providing for a lesser proposed guideline sentencing range (see Motion to Vacate at 13-14) is likewise denied. Such a remedy would not be available even if this Court were to find that § 2255 relief was warranted, as this Court cannot force the Government to proffer or accept a plea agreement. As an aside, the Court observes that the words used by Shelton in making this request, wherein he states that this Court "should give [him] a *second* opportunity to accept the plea bargain offer," tend to contradict this claim. (Id. at 14.) (emphasis added).